UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEFFERSON FARRAY,

            Petitioner,

    -v-                                                      14-CV-915-JTC

ERIC H. HOLDER, JR., Attorney General
of the United States;
WALTER M. INGRAM, Office of Enforcement
and Removal Operations, Post Order Custody
Review Unit Chief, Washington, DC Field Office;
MICHAEL PHILIPS, Office of Enforcement and
Removal Operations, Buffalo Field Office,
Department of Homeland Security, Bureau of
Immigration and Customs Enforcement;
SEAN CALLAGHER, Designated Field Office Director,
ERO Buffalo Federal Detention Facility;
TODD TRYON, Assistant Field Office Director,
Buffalo Federal Detention Facility;
MR. SCHRADER, Supervisory Detention and
Deportation Officer, Buffalo Federal Detention Facility;
OFFICER BERMUDEZ, Deportation Officer, Buffalo
Federal Detention Facility,

            Respondents.

---

## **INTRODUCTION**

Petitioner Jefferson Farray, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1.  As

directed by this court's order entered December 1, 2014 (Item 4), respondent[1] has submitted an answer and return (Item 6), along with an accompanying memorandum of law (Item 7), in opposition to the petition. Petitioner declined to file a reply. For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Grenada, was admitted to the United States at Miami, Florida, on or about April 24, 1998, as a lawful permanent resident. *See* Item 6-1 (Payan Decl.), ¶ 5; Item 1, ¶ 5.

According to DHS records, petitioner has the following criminal history:

-On or about April 30, 2008, petitioner was convicted in New York State Supreme Court, Kings County, of Criminal Possession of a Controlled Substance in the 5th Degree (cocaine), in violation of N.Y. Penal Law § 220.06(1) and was sentenced to a term of incarceration of 364 days.

-On or about October 14, 2008, petitioner was convicted of Resisting Arrest.

-On or about August 27, 2009, petitioner was convicted of Criminal Possession of a Controlled Substance in the 7th Degree.

-On or about January 9, 2010, petitioner was convicted of False Personation.

-On or about June 30, 20011, petitioner was convicted in New York State Supreme Court, Kings County, of two counts of Criminal Sale of a Controlled Substance in the 3rd Degree (cocaine), in violation of N.Y. Penal Law § 220.39(1) and was sentenced to a term of incarceration of two years.

*See* Payan Decl., ¶ 6; Item 6-2 ("Exh. A"), pp. 6, 21.

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* section 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

On August 11, 2011, while at the Ulster Correctional Facility in Fishkill, New York, petitioner was encountered by officers of the DHS Criminal Alien Program. *See* Payan Decl., ¶ 7. Upon his release from the custody of the New York State Department of Corrections and Community Supervision, petitioner was received into DHS custody on February 3, 2012. Payan Decl., ¶ 8; Exh. A, pp. 11, 22. Removal proceedings were commenced by a Notice to Appear ("NTA") served February 6, 2012, which charged petitioner with being subject to removal from the United States pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony and a controlled substance offense. *Id.*; Exh. A, pp. 19-21.

On May 7, 2012, an Immigration Judge ("IJ") ordered petitioner's removal to Grenada. Payan Decl., ¶ 9; Exh. A, pp. 17-18. On September 26, 2012, the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal from the IJ's decision. Payan Decl., ¶ 10; Exh. A, p.7.

On September 27, 2012, DHS sent a presentation packet to the Consulate General of Grenada (the "Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal. Exh. A, p. 24-28.

On October 3, 2012, DHS served petitioner with a formal Warning for Failure to Depart, along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. Exh. A, pp. 14-15. The warning form advised petitioner, among other things, of penalties under INA § 243, for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA

3

§ 241(a)(1)(C), a failure to comply or to provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention. *Id.*

On October 29, 2012, petitioner filed a *pro se* petition for review of the BIA's September 26, 2012 decision in the United States Court of Appeals for the Second Circuit. Exh. A, pp. 30-32. On November 27, 2012, DHS received a travel document issued by the Consulate. Payan Decl., ¶ 14. Petitioner was scheduled for removal from the United States to Grenada on December 4, 2012, however on that date he willfully refused to be removed. Exh. A, p. 7.

In December 2012, DHS conducted a review of petitioner's custody status, in accordance with immigration regulations. Exh. A, pp. 10-13. On December 19, 2012, DHS issued a Decision to Continue Detention advising petitioner that, based upon the totality of information available in his file, DHS determined that petitioner would be a threat to the community and a flight risk if he were to be released from custody. *Id.*, p. 11.

On December 21, 2012, petitioner filed a motion for a stay of removal in the Second Circuit. *See* Exh. A, p. 31. Thereafter, on February 1, 2013, petitioner filed a motion to reopen with the BIA. *Id.*, p. 7. On March 15, 2013, the BIA granted the motion and remanded the case back to the IJ. Upon remand, on May 9, 2013, the IJ denied petitioner's requests for relief and again ordered him removed from the United States to Grenada. Exh. A, p 16. Petitioner appealed the decision to the BIA. Exh. A, p. 7.

By order dated June 11, 2013, the Second Circuit dismissed the petition for review. Exh. A, p. 33. On October 25, 2013, the BIA dismissed petitioner's appeal of the IJ's order of removal of May 9, 2013. *Id.*, p. 7. On November 13, 2013, petitioner filed another

4

petitioner for review in the Second Circuit, related to the BIA's order of October 25, 2013. Exh. A, pp. 34-36. This second petition for review was accompanied by a request for a stay of removal. Accordingly, DHS was prevented from executing the removal order due to the forbearance policy between DHS and the Second Circuit. Payan Decl., ¶ 21.

In accordance with immigration regulations, DHS again reviewed petitioner's custody status in January 2014. On January 16, 2014, petitioner was advised that DHS determined that his detention would be continued. Payan Decl., ¶ 22; Exh. A, pp. 6-9. In April 2014, DHS Headquarters Custody Management Unit ("HQCMU") conducted a further review of petitioner's custody status, including an in-person interview of petitioner on April 7, 2014, at the Buffalo Federal Detention Facility in Batavia, New York. Following completion of the file review and interview, petitioner was notified on April 24, 2014, that DHS determined to continue his detention in DHS custody. Payan Decl., ¶¶ 23-24; Exh. A, pp. 4-5.

A further review of petitioner's custody status was conducted by DHS in August 2014 and November 2014. Following each review, petitioner was again advised that DHS determined that he would continue in detention. Exh. A, pp. 2-3. The petition for review and request for stay of removal remain pending before the Second Circuit Court of Appeals. Payan Decl., ¶ 26.

Petitioner filed this petition on October 29, 2014, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. He argues that his lengthy detention of over 30 months is unconstitutional. The Respondent contends that, at this time, the only obstacle to petitioner's immediate removal to Grenada is the motion for a stay of removal pending before the Second Circuit. Payan Decl., ¶ 26.

**DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis,* 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's initial detention in DHS custody was pursuant to INA § 236, pending completion of removal proceedings. Section 236 provides for mandatory detention during removal proceedings of certain criminal aliens.  *See* 8 U.S.C. §§ 1226(a)(1)-(2); 1226(c)(1)(B).

After the order of removal became final on September 26, 2012, petitioner's detention was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (I) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the

---

[2]INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts

of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on February 3, 2012, upon his release from state custody, and his detention pending completion of immigration removal proceedings was authorized by INA § 236. *See* Payan Decl., ¶ 8. This detention continued until September 26, 2012, when the BIA dismissed petitioner's appeal from the Immigration Judge's order of removal. *See* 8 C.F.R.

§ 1241.1(b) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced. DHS promptly undertook efforts to secure a travel document for petitioner's removal to Grenada by sending a presentation package to the Consulate on September 27, 2012. *See* Payan Decl., ¶ 11. On November 15, 2012, Grenadian authorities issued a travel document and DHS made arrangements for petitioner's removal. However, on December 4, 2012, petitioner willfully refused to be removed. Thereafter, he filed a petition for review in the Second Circuit Court of Appeals and a motion for a stay of removal which, due to the forbearance policy between the court and DHS, prevents DHS from executing the removal order until the court issues a decision on the request for a stay. Additionally, petitioner filed a motion with the BIA to reopen his removal proceedings. That motion was granted and the matter was remanded to the IJ who again ordered petitioner's removal. Petitioner filed another petition with the Second Circuit to review that determination, and an additional motion for a stay.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court. *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. November 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled

on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. October 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. January 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Furthermore, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang v. Ashcroft*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Grenada in the reasonably foreseeable future. While petitioner has argued that no travel document has been secured, *see* Item 1, ¶ 53, as discussed above, DHS successfully obtained travel documents for petitioner's removal to Grenada.  There is no reason to believe that similar documents will not be obtained once the pending motion for a stay is decided by the Second Circuit court.

In the meantime, petitioner's continued detention is not in violation of his due process rights as long as his removal is reasonably foreseeable.  Significantly, petitioner has provided no evidence that DHS will be unable to remove him within a reasonable time following the resolution of his petition for review.  Detention during an appellate stay of removal, whether formal or in accordance with the Second Circuit forbearance policy, is

not indefinite because the end of the litigation provides a definite end point.  *See Prieto-Romero v. Clark,* 534 F.3d 1053, 1065 (9th Cir. 2008) (alien's lengthy detention not indefinite under INA § 236 where end point foreseeable with conclusion of litigation); *Soberanes v. Comfort,* 388 F.3d 1305, 1311 (10th Cir. 2004) (alien's detention during judicial review not indefinite because it has a "definite and evidently impending termination point").  Additionally, there is no institutional barrier to petitioner's removal to Grenada.  In recent years, DHS has successfully repatriated many aliens to Grenada.[3]

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on any delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process.  Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that

---

[3] For example, DHS statistical reports show that in fiscal year ("FY") 2010, a total of 47 aliens were repatriated to Grenada; in FY 2011, 46 aliens were repatriated to Grenada; and in FY 2012, 28 aliens were repatriated to Grenada.  Item 6-1, ¶ 27 (citing DHS Yearbook of Immigration Statistics: 2012, Table 41: https://www.dhs.gov/yearbook-immigration-statistics-2012-enforcement-actions).

removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama v. Dep't of Homeland Sec.,* 553 F. Supp. 2d 301, 307 (W.D.N.Y. 20008).

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

           \s\ John T. Curtin      
           JOHN T. CURTIN
           United States District Judge

Dated:  May 6,  2015